UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Rodney Eugene Smith,
    Appellant,

v

Case No.:

United States,
    Appellee.
_____/

Notice of Request That the Notice of Appeal
Be Adjudicated by This Honorable Court

Appellant, Rodney Eugene Smith, requests this Honorable Court to adjudicate the attached NOTICE OF APPEAL OF DENIAL OF TORT CLAIM vice the UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINA, BLUEFIELD because:

1. Three judges are named in the tort claims and therefore a court within the same judicial district could be bias towards Appellant;

2. There was considerable adverse bias news against Appellant during the trial which included front page coverage in the Bluefield, WV newspaper, and the radio. Appellant contends the coverage was bias and not in the spirit of seeking the truth concerning the issue at trial.

Wherefore, in light of the above, Appellant prays this Honorable Court grant this request to adjudicate the NOTICE OF APPEAL OF DENIAL OF TORT CLAIM.

Respectfully submitted this 5th day of January, 2006.

Rodney Eugene Smith
FCC, Low, Unit C-3
P.O.Box 1031
Coleman, FL, 33521-1031

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Rodney Eugene Smith,
    Appellant,

v                                            Case No.:

United States,                    Notice of Appeal of Denial of
    Appellee.                     Tort Claim.
_____/

State of Florida)
              ) ss
County of Sumter)

## NOTICE OF APPEAL OF DENIAL OF TORT CLAIM

Violations of United States Congressional Legislative Jurisdiction
and Statutory Laws and Rules of Court that Resulted in a Fraudulent
Indictment, False Arrest, Unlawful Search and Seizure of a Person
and Property, Malicious Prosecution, and Unlawful Incarceration
**Are Crimes.**

    This is an appeal of a "formal notification" from the Administrative Office of the United States, received on or about June 25, 2005, and the prosecuting attorney's and Internal Revenue Service's non-response to Standard Form 95's indicating a denial of claim.

    1. In the "formal notification" in paragraph two of the letter dated September 22, 2005, see Exhibit 1, address that "the United States may assert absolute judicial immunity from liability".

    2. Appellant maintains that the United States Government employees failed to consider the legislative jurisdictional requirements of Title 40, § 255, and Title 18, §§ 5 and 7, and Rule of Court Rule 4(d)(2) to charge Appellant with a crime. Thus the United States is <u>not</u> immune from judicial immunity from liability.

The Requirement of Title 40, § 255

3. Title 40, § 255 is a necessary element to establish criminal jurisdiction by the United States Government within the State of West Virginia to charge Appellant with a crime.

4. Title 40, § 255 states in part:

> "Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction of the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required, but the head or other authorized officer or any department or independent establishment or agency of the Government may, in such case and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such land or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such manner as may be prescribe by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

5. In discussing the subject of federal jurisdiction, the Court held in <u>Polland v Hagan</u>, 44 US (3 How) 212 (1845) that:

> "We think a proper examination of this subject will show that the United States never held any municipal sovereignty jurisdiction, or right of soil in and to the territory of which Alabama or any of the new States were formed," 44 US at 221.

> "Because, the United States have no constitutional capacity to exercise municipal jurisdiction, sovereignty, or eminent domain, within the limites of a State or elsewhere, except in the case in which it is expressly granted," 44 US at 223

> "Alabama is therefore entitled to the sovereignty and jurisdiction over all the territory within her limites, subject to the common law." 44 US at 229.

And in <u>United States v Bevans</u>, 16 US (3 Wheat) 336 (1818), the Court held:

> "We answer, without jurisdiction, the jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power." 3 Wheat at 386, 397 (1818).

6. The legal effect of the Declaration of Independence was to make each

2

new State a separate and independant sovereign over which there was no other government or superior jurisdiction. This is clearly shown in M'Liviane v Coxxe's Lessee, 8 US (8 Cranch) 209, 212 (1808) where the Court held:

> This opinion is predicated upon a principal which is believed to be undeniable; that the several states which compose this Union at least as regarded their municipal regulations, became entitled from the time when they declared themselves independant, to all the rights and powers made by the Britain King. The treaty of peace contains a recognition of their independence, not a grant of it. From hence it results, that the laws of sovereign states, and such were obligatory upon the people of such state, from the time they were enacted."

7. If jurisdiction is not vested in the United States pursuant to statute, there is no federal jurisdiction as was found in Adams v United States, 319 US 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1943). The following is cited from note 14, Title 40, § 255, page 584.

> "In view of 40 USCS § 255, no jurisdiction exists in United States to enforce criminal laws, unless and until consent to accept jurisdiction over lands acquired by United States has been filed in behalf of United States as provided in said section, and fact that state has authorized government to take jurisdiction is immaterial."

8. The judicial history is replete with court decisions upholding United States legislative/territorial jurisdiction to try criminal cases. see Commonwealth v Young, Brightly, N.P. (Pa. 1818); People v Godfrey, 17 Johns. 225 (N.Y. 1819); United States v Cornell, 25 Fed. Cas. 646, 867 (C.C.D.R.I. 1819); New Orleans v United States, 35 US (10 Pet) 662 (1836); New York v Miln, 36 US (11 Pet) 102 (1837); Ft. Leavenworth v Lowe, 114 US 525, 5 S.Ct. 995 (1885); Surplus Trading Co. v Cook, 302 US 134, 58 S.Ct. 208 (1937); Mason Co. v Tax Comm of State of Washington, 302 US 186, 58 S.Ct. 233 (1937); Wilson v Cook, 327 US 474, 66 S.Ct. 663 (1946); Penn Dairies v Milk Control Comm. of Pa., 318 US 261, 63 S.Ct. 617 (1943); S.R.A. v Minesota, 327 US 558, 66 S.Ct. 749 (1946).

9. Congress enacted the criminal statute, Title 18, to conform with Title 40, § 255 when it enacted Title 18, § 7(3) as follows:

3

> "(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

10. The Federal Rules of Criminal Procedure also comply with the United States legislative/territorial jurisdictional limitations. Rule 54(b)(2) (2000 ed.) states:

> "These rules apply to proceedings for offenses committed on the high seas or to proceedings **out of the jurisdiction of any particular State**."

And Rule 54(c) (2000 ed.):

> "Act of Congress - includes any act of Congress locally applicable to and in force in the District of Columbia, in Puerto Rico, in a territory or in an insular possession."

> "Federal Magistrate Judge, Judge of District Court, Magistrate Judge - judge of the United States...**specifically empowered by statute in force in any territory or possession, the Commonwealth of Puerto Rico, or the District of Columbia,** to perform a function which a particular rule relates..." (emphasis added)

11. The "United States" is further defined in the "Geographical sense" in the IRC § 3121(e)(1)(2) which states that the "States" of the "United States" include "The District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa." (1988 ed. of 26 USC § 3121) None of the "particular" States of the Union of American States are included in the term "United States". When Alaska and Hawaii were territories of the United States, they too were defined as "states" of the United States. (See IRC of 1939, United States Statutes at Large, Volume 53, Part 1, § 3797). However, upon admission to the Union of 50 States, Alaska and Hawaii were deleted from the definition of "states" of the United States.

12. The Court in <u>United States v Watson</u>, 80 F.Supp. 649 (E.D. Va., 1948 dismissed federal criminal charges by stating:

> "Without proof of the requisite ownership or possession of the United States, the crime has not been made out," at 651.

4

12a. Title 15 U.S.C., § 1529 also gives an insight into the legislative jurisdiction of the United States Government with:

> "Notwithstanding any other law, the Secretary of Commerce, whenever the Secretary considers it desirable, may relinquish to a State, or to a Commonwealth, territory or possession of the United States, all or part of the legislative jurisdiction of the United States over lands or interests under the Secretary's control in that State, Commonwealth, territory, or possession. Relinquishment of legislative jurisdiction under this section may be accomplished -
>
> (1) by filing with the Governor (or, if none exists, with the chief executive officer) of that State, Commonwealth, territory or possession concerned a notice of relinquishment to take effect upon acceptance of the notice; or
>
> (2) as required by the laws of the State, Commonwealth, territory or possession.

13. The Fourth Circuit, which this case originates from, consistently upheld the Congressional legislative/territorial mandate with the following which include numerous State cases.   Adams v Londeree, 139 W.Va. 748, 83 S.E.2d 127 (1954); Carnegie-Illinois Steel Corp v Alderson, 127 W.Va. 807, 34 S.E.2d 737 (1945), cert denied., 326 U.S. 764; Laing, In re, 127 Fed. 213 (C.C.S.D.W.Va., 1903); Air Terminal Services, Inc. v Rentzel, 81 F.Supp. 611 (E.D.Va. 1949); Andrews v Auditor, 69 Va. 115 (1877); Buttery v Robbins, 177 Va. 368, 14 S.E.2d 544 (1941); Bank of Phoebus v Byrum, 110 Va. 708, 67 S.E. 349 (1910); County of Norfolk v Portsmouth, 186 Va. 1032, 45 S.E.2d 136 (1947); County of Prince William v Thornason Park, 197 Va. 861, 91 S.E.2d 441 (1956); Crook, Homer & Co. v Old Point Comfort Hotel Co., 54 Fed. 604 (C.C.E.D.Va. 1893); Crowder v Virginia, 197 Va 96, 87 S.E.2d 745 (1955), app. dism., 350 U.S. 957; Edelstein v South Post Officers Club, 118 F.Supp. 40 (E.D.Va. 1951); Foley v Shriver, 81 Va. 694 S.E.2d 149 (1949); Lima v Lawler, 63 F.Supp. 446 (E.D.Va. 1945); McLaughlin v Bank of Potomas, 48 Va. 68 (1850); Nash v Air Terminal Services, Inc., 85 F.SUpp. 545 (E.D.Va. 1949); Hall v Commonwealth, 129 Va. 738, 105 S.E. 551 (1921); Hercules Powder Co. v Ruben, 188 Va. 694, 51 S.E.2d 149 (1949); Nikis v Commonwealth, 144 Va 618, 131 S.E. 236 (1926); Norfolk & P.B.L.R. v Parker, 152 Va. 484, 147 S.E. 461 (1926); Randolph v Commonwealth, 145 Va. 883, 134 S.E. 544 (1926); Sollitt & Sons Const. Comp. v Commonwealth, 161 Va. 854, 172 S.E. 290 (1934), app dism. 292 U.S. 599; Tatem, Ex parte, 23 Fed. Cas. 708, no 13,759 (E.D.Va., 1877); United States v Crary, 1 F.Supp. 406 (W.D. Va., 1932); United States v McIntosh, 57 F.2d 573, 2 F.Supp. 244 (E.D.Va. 1932)' United States v Penn., 48 Fed. 669 (C.C.E.D.Va., 1880); United States v Prince William County, 9 F.Supp. 219 (E.D.Va., 1934), aff'd, 79 F.2d 1007 (C.A. 4 1935), cert. den. 297 U.S. 714; United States v William R. Trigg Co., 115 Va. 272, 78 S.W. 542 (1912); Virginia v Stiff, 144 F.Supp. 169 (W.D.Va., 1956); Waltrip v Commonwealth, 189 Va. 365, 53 S.E.2d 14 (1949); Western Union Tel. Co. v Richmond

5

67 Va. 1 (1875); <u>Woodfin v Phoebus</u>, 30 Fed. 289 (C.C.E.D.Va., 1887)

14. In addition, the Fifth Circuit has consistently and redundantly upheld the Congressional legislative/territorial jurisdictional requirements. In <u>United States v Townsend</u>, 474 F.2d 209 (1973), a criminal conviction was <u>reversed</u> by the Fifth Circuit upon a determination that there was no evidence that the alleged crime occured "within the jurisdiction of the United States." The Court made it quite clear that, "<u>It [jurisdiction] comes down, not to a question of law as such, but to a question of geography.</u>" Id at 214.

15. The Fifth Circuit has historically demonstrated its clear understanding of the principles of limited federal jurisdiction by examining closely the requiremets of 1) particular State cession, 2) acceptance by the National Congress, 3) purchase by the United States, and 4) possession for the purpose of government. In <u>Brown v United States</u>, 257 F. 46 (5th Cir. 1919), it set forth the standard for indictments and informations of "offenses" within the federal jurisdiction. The Fifth Circuit found that a federal judge could take judicial notice that the district had jurisdiction over the crime when it made clear that the "place where" the offense was committed was "**outside a particular State**" and "within the jurisdiction of the United States".

> "Where an indictment in a federal court sufficiently described the <u>place where</u> the offense was committed, the court will take judicial notice of facts that vest the United States with <u>exclusive jurisdiction</u> to a federal court." <u>Id</u> at 46. (Emphasis added)

For the district court to have <u>exclusive</u> jurisdiction, the place where the offense was committed <u>must</u> be "out of the jurisdiction of a particular state". Also see <u>Adams</u> in paragraph 7 above, a Fifth Circuit case; <u>United States v Benson,</u> 495 F.2d 475 (5th Cir. 1974); <u>United States v Hudspeth</u>, 223 F.2d 848 (5th Cir. 1955); and <u>Gainey v United States</u>, 324 F.2d 731 (5th Cir. 1963).

16. The Supreme Court of the United States clearly stated this principal

6

Case 1:05-cv-01620-UNA   Document 6   Filed 01/13/2006   Page 9 of 20

<u>Caha v United States</u>, 152 U.S. 211, 215, 14 S.Ct. 513 (1894) by stating:

> "The laws of Congress do not extend into the territorial limits of the states, but have force <u>only</u> in the District of Columbia, and other places that are <u>within the exclusive jurisdiction</u> of the national government,..." (emphasis added)

17. The above cases regarding the distinction between the State and Federal jurisdiction continue through today; See <u>Paul v United States</u>, 371 US 245, 83 S.Ct. 426 (1963); and <u>United States v Tax Comm. of Mississippi</u>, 412 US 363, 93 S.Ct. 2183 (1973). Obviously, therefore, what was well settled in the beginning of this Republic of the "United States" regarding the extent, scope, and reach of these two separate and distinct jurisdictions, remain unchanged and forms the foundation and basis of the intended smooth workings of State government in conjunction with the federal system.

18. In <u>Bowen v Johnson</u>, 97 F.2d 860 (9th Cir. 1938), the question presented was whether jurisdiction over an offense prosecuted in federal courts could be raised in a habeas corpus; the Court concluding that such jurisdictional challenge could be raised in habeas corpus petition; and then addressed the issue. The Court found that the U.S. both owned the property in question and had a State legislative grant ceding jurisdiction to the U.S., thus there was jurisdiction to prosecute Bowen.

19. At this point, it must be pointed out that Congress has no power to grant the Court or the Government jurisdiction over the alleged offenses in case 01-01-00007-01, as the U.S. Congress had/has no legislative jurisdiction out of the territorial jurisdiction of the United States and the Federal Government.

20. After reading through the above, one has to view with new clarity what is ceded to or given through legislative jurisdiction to the United States from the State of West Virginia. In doing so, it therefore follows that if Appellant and Appellant's wife's property near Ballard, Monroe County, West Virginia, or the

7

purported activities which allegedly occurred at that location, was not within the expressed limits of such reservations, the United States had no legislative jurisdiction in case 01-01-00007-01, as the above plainly dictates that the State retains jurisdiction of crimes not comitted upon one of the aforesaid reservations. Therefore, the State of West Virginia retains jurisdiction over the person and property of individuals situated in the State, exclusive of that ceded to the United States, and in the above, clearly demonstrates that the State of West Virginia held legislative jurisdiction, and not the Federal Government.

20. The U.S. Supreme Court and Appellate Courts have set forth the rule that in criminal prosecutions, the government, as the party seeking to establish the existence of federal jurisdiction, must prove U.S. ownership of the property in question and a state cession of jurisdiction. This same rule manifests itself in state cases. States must only prove that the offense was committed within the state and county thereof. If a defendant contends that only the federal government has jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and the state cession of jurisdiction.

21. One of the clearest statements of this limitation of federal criminal jurisdiction is found in Title 18, § 451, paragraph 3, 1940 ed. of the U.S.C. This section of the USCA was interpreted by the Attorney General of the United States in a letter directed to the Chairman of the Senate Finance Committee as saying:

> "Criminal jurisdiction of the federal courts is restricted to federal reservations over which the federal government has exclusive jurisdiction, as well as to fort, magazines, arsenals, dockyards or other needful buildings."

22. The Supreme Court in Tafflin v Levitt, 493 U.S. 455, 107 L.Ed.2d 887, 110 S.Ct. 792 stated on 107 L.Ed.2d at 894 that:

> " ("We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights created

8

> by federal law. Concurrent jurisdiction has been a common phenomenon
> in our judicial history, and exclusive federal court jurisdiction
> over cases arising under federal law has been the exception rather
> than the rule."). cites omitted.

23. Extraterritorial jurisdiction does not apply within the Union of States as expressed in <u>United States v Gatlin</u>, 216 F.3d 210 (2nd Cir. 2000) wherein it states:

> "The answer to this question depends, in turn, on another, more
> significant question of first impression: whether 18 U.S.C., §
> 7(3), which is incorporated by reference into § 2243(a) (and
> other sections of Title 18) and which defines the "special mar-
> itime and territorial jurisdiction of the United States" to
> include "[a]ny lands reserved or acquired for the use of the
> United States, and under the exclusive or concurrent jurisdiction
> thereof," applies extraterrtorially. We conclude, contrary to
> the District Court, that § 7(3) does not apply extraterritorially
> and that 2243(a) cannot, therefore, apply to Gatlin's acts.
> Accordingly, we reverse Gatlin's conviction and dismiss the
> indictment."
>
> p 211 - "In other words, absent "clear evidence of Congressional
> intent" to apply a statute beyond our borders, the statute will
> apply only to the territorial United States."

The Claim that the Tort Claims are barred as Untimely
Are Not True

24. The second conclusion of the Exhibit 1 letter states "... the claims are barred as untimely. 28 U.S.C. § 2401(b)." Appellant first became aware of the Congressionally mandated requirement of Rule 4(d)(2),   Title 5, §§ 3372/3374, Title 18, §§§§ 2, 3, 3182, 3193, and Federal Rules of Criminal Procedure 17(a) with a December 27, 2004 filing with the United States District Court, Southern District of West Virginia, Bluefield, and subsequent filings.

25. The facts of law mentioned in 24 above were unknown by Petitioner acting in his own defense at the time of trial, and not trained in law, and therefore the facts could not, by the exercise of reasonable diligence, have been discovered by Appellant, and presented to the Court because of his incompetence. Had the evidence been available at the time of the indictment hearing and/or trial

the conclusion of the trial certainly would have been different.

26. Furthermore, Appellant had a Federal Court appointed attorney up through and including the initial indictment presentment and the attorney never brought forth any of the aforementioned facts, so how was Appellant, untrained in law, suppose to know of the aforestated requirements of law.

27. The Court in <u>Klein v United States</u>, 880 F.2d 250 (10th Cir. 1989) stated:

> "When claiming newly discovered evidence, the Petitioner must show that due diligence on his part could not have revealed the evidence prior to trial and that the evidence "would have likely led to a different result."" <u>Scherer</u>, 673 F.2d at 178

Also see <u>Moody v United States</u>, 874 F.2d 1575 (11th Cir. 1989).

28. 51AMJUR2d, § 148 in part:

> "A claim accrues..., or when facts come into existence that give the claimant a right to seek a remedy in the courts." (cites omitted).

29. In the case <u>Geo. Knight v Watson Wyatt & Co.</u>, 170 F.3d 210 (1st Cir. 1999) the Court stated:

> "1. Pursuant to the discovery rule, an action accrues when the injured party knew, or in the exercise of reasonable diligence, should have known the factual basis for the cause of action."

And <u>Brown v Nationsbank Corp.</u>, 188 F.3d 579 (5th Cir. 1999):

> P 589 - "The FTCA applies a two-year statute of limitations from the accrual date of the cause of action. See 28 U.S.C. § 2401(b). A cause of action accrues, under federal law, "when the plaintiff knows or has reason to know of the injury which is the basis of the action." See <u>Moore v McDonald</u> 30 F.3d 616, 620-21 (5th Cir. 1994)."

And <u>Knight</u>, 170 F.3d 210 (1st Cir. 1999):

> "2. Limitation of Actions. - For statute of limitations to be tolled pursuant to discovery rule, factual basis for the cause of action must have been inherently unknowable at the time of the injury, and factual basis for a cause of actions is "inherently unknowable" if it is incapable of detection by the wronged party through the exercise of reasonable diligence."

30. In light of the above, Appellant believes that the Tort Claims are not time barred by law.

### The Amended Standard Form 95's

31. On June 23, 2005, Appellant sent Kimberly P. Smith, Torts Branch, see Exhibits 2, 3, 4, 5, and 6, a notice notifying Smith that amended SF 95's were sent to the appropriate interested parties. The notices were sent by certified mail 7005 0390 0000 8160 9998. The Amended SF 95's were sent before the agencies responded to the initial SF 95's.

32. Title 28 U.S.C., § 2675 note 92:

> "Claims presented to federal agency within two years after accident was timely under this chapter and section 1346(b) of this title, even though it was not presented to appropriate agency. Stewart v United States, D.C. Ohio 1978, 458 FSupp 871."

Note 93:

> "Federal tort claim transfer regulations allows for constructive filing i.e., relation back-of claims presented within statutory limitations period but delivered to the wrong agency and neither transferred to the proper agency nor returned to the claimant. Bukala v United States, C.A 7 (Ill) 1988, 854 F2d 201. See also Greene v United States, C.A. 8 (mo) 1989, 872 F.2d 236 on remand 745 FSupp 1486."

Note 142:

> ""Final agency actions" for purpose of regulation providing that a claim may be amended by the claimant at any time prior to final agency action or prior to exercise of claimant's option under subsec. (a) of this section for disposition by federal agency as prerequiste to bringing action against United States, occurs when agency has taken final step necessary to settle claim, i.e., when the agency has procured the claimant's acceptance of the agency's offer to settle the claim. Odin v United States, 1981, 656 F2d 798, 211 U.S. App. D.C. 209."

33. Again, the claim is not barred from adjudication for the above reasons, and the claim is also not barred as the Amended SF 95's removed the Constitutional issues.

11

The Issue of the United States Asserting
Absolute Immunity

34. The United States claim of absolute immunity is not justified for the following reasons:

    a. The United States employees, including judges and prosecutors, acting in bad faith and with deliberate indifference, failed to insure the requirements of Title 40, § 255 were met;

    b. The United States employees, including judges and prosecutors, acting in bad faith and with deliberate indifference, failed to abide by the statutory requirements of Title 18, §§§§ 2, 3, 5, and 7; (see the attached Exhibits)

    c. The United States employees, including judges and prosecutors, acting in bad faith and with deliberate indifference failed to abide by the statutory requirements of Title 18, §§ 3182 and 3193; (see the attached Exhibits)

    d. The United States employees, including judges and prosecutors, acting in bad faith and with deliberate indifference, failed to abide by the rules of Court, in particular, F.R.Cr.P. Rule 4(d)(2), Rule 17(a), among other; (see Exhibits)

    e. The United States employees, including judges and prosecutors, acting in bad faith and with deliberate indifference, failed to abide by the statutory requirements of Title 5, §§ 3372 or 3374, and other statutory requirements. (see Exhibits)

35. As a result of the United States not complying with the provisions of Title 40, § 255, Title 18, §§ 5 and 7 the United States is not immune from liability.

36. The Supreme Court in Mireles v Waco, 116 L.Ed.2d 947 which is quoted in JUDGE'S LIABILITY FOR DAMAGES, §7[a]; Appellant quotes in part:

> "§ 7. Where judge's actions are taken in absence of jurisdiction.
>
> [a] Generally – The following Supreme Court decisions support the view, either expressly or by negative implication, that an exception exists to the general rule of judicial immunity from liability for damages with respect to actions which are taken by a judge in the absence of jurisdiction."

> "...,and judicial acts done in the clear absence of all jurisdiction over the subject matter, as to which judges were not exempt from liability."
>
> "With respect to money damages, a judge is not immune for actions which are judicial in nature, but which are taken in the complete absence of all jurisdiction, the court stated in Mireles v Waco, (1991, US) 116 L Ed 2d 9, 112 S Ct 286."
>
> Also to the effect that an exception exists to the general rule of judicial immunity from liability for damages with respect to actions which are taken by a judge in the absence of jurisdiction are Pierson v Ray (1967) 386 US 547, 18 L.Ed 2d 288, 87 S Ct 1213; and National Collegiate Athletic Ass'n v Tarkanian, (1988) 488 US 179, 102 L Ed 2d 469, 109 S Ct 454."

And in the case Mireles v Waco, 116 L Ed 2d 12:

> "Judge § 14 - Immunity from damages suit (in part)
>
> 2. ..., judicial immunity can be overcome in only two sets of cirstances, under which a judge is not immune from liability for (1) non-judicial actions, that is, actions not taken in the judge's judicial capacity, or (2) actions,though judicial in nature, taken in the complete absence of all jurisdiction."
>
> Page 14 - "Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Forester v White, 484 US, at 227-229, 98 L Ed 2d 555, 108 S Ct 538; Stump v Sparkman, 435 US, at 360, 55 L Ed 2d 331, 98 S Ct 1099. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id., at 356-357, 55 L Ed 2d 331, 98 S Ct 1099; Bradley v Fisher, 13 Wall, at 351, 20 L Ed 646."
>
> Note at bottom of page 16 in Separate Opinions, Justice Stevens dissenting.
>
> "Moreover, even if the act is "judicial" judicial immunity does not attach if the judge is acting in the 'clear absence of all jurisdiction.'"" Stump v Sparkman, 435 US, at 357, 55 L Ed 2d 331, 98 S Ct 1099 (quoting Bradley v Fisher, 13 Wall 335, 351, 20 L Ed 646 (1872)."

37. 15AMJUR2d § 105 Judicial or quasi-judicial offiers -

> "The immunity is lost only when judicial acta are performed in the clear absence of all jurisdiction." (cite omitted)

38. The Court in Ireland v Tunis, 113 F.3d 1435 (6th Cir. 1997) had this to say on the subject of judicial immunity.

13

p 1440 - (in part) - "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."

39. 46AMJUR2d § 75 (in part) "Judges may be exposed to liability for non-judicial acts and acts performed in the clear absence of all jurisdiction."

40. The Supreme Court in <u>Steel Co. v Citizens for Better Env.</u>, had this to say about jurisdiction.

> ""Without jurisdiction the court cannot proceed at all in any case. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." <u>Ex Parte McCardle</u>, 7 Wall 506, 514, 19 L Ed 264 (1869)."

### Federal Employees Are Bound to Obey "Binding Directives" as Mandated by Congress.

41. For purposes of tort claims, all persons employed by the Federal Government, including judges and prosecutors, are considered employees. The fact that Congress has mandated what statutes, regulations, and rules are "binding directives" is made perfectly clear in <u>Loughlin v United States</u>, 393 U.S 155 (D.C. Cir. 2004).

> "[5] The Supreme Court has established a two-step test to determine whether a governmental act or omission falls within the ambit of the discretionary function exception. See <u>Cope</u>, 45 F.3d at 448 (citing <u>United States v Gaubert</u>, 449 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). These two prongs track the language of § 2680(a). The first asks whether a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow...'" <u>Gaubert</u>, 499 U.S. at 332, 111 S.Ct. at 1273 (quoting <u>Berkovitz v United States</u>, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988). If such binding directive exists, then "the employee has no rightful option but to adhere to the directive." <u>Berkovitz</u>, 486 U.S. at 536, 108 S.Ct. 15 1958-59. <u>Failure to abide by such directives opens the United States to suit under FTCA.</u>" (emphasis added)

The Federal employees involved in this instant matter obiously failed to <u>abide by the binding directives</u>.

42. Even the President of the United States showed his concern for Federal employees ethical conduct in Executive Branch of Government when he issued the following order.

14

EXECUTIVE ORDER NO 12674

Apr. 12, 1989, 54 F.R. 15159 as amended Ex. Ord.
No. 12731, Oct. 17, 1990, 55 F.R. 42547

PRINCIPLES OF ETHICAL CONDUCT FOR GOVERNMENT
OFFICERS AND EMPLOYEES

By virtue of the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to establish fair and exacting standards of ethical conduct for all executive branch employees it is hereby ordered as follows:

Part I - Principles of Ethical Conduct

Section 101.  Principles of Ethical Conduct

To ensure that every citizen can have complete confidence in the integrity of the Federal Government, each Federal employee shall respect and adhere to the fundamental principles of ethical service as implemented in regulations promulgated under sections 201 and 301 of this order:

(a) Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principals above private gain.

(e) Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards promulgated pursuant to this order.

Part III - Agency Responsibilities

Section 301.  Agency Responsibilities

Each agency head is directed to:

(a)  Supplement, as necessary and appropriate, the comprehensive executive branch-wide regulations of the Office of Government Ethics, with regulations of special applicability to the particular functions and activities of that agency. Any supplementary agency regulations shall be prepared as addenda to the branch-wide regulations and promulgated jointly with the Office of Government Ethics, at the Agency's expense, for inclusion in Title 5, of the Code of Federal Regulations.

(b)  Ensure the review by all employees of this order and regulations promulgated pursuant to the order.

43.  Today, on the CNN news, even the President's integrity is in question. The employees involved in this matter acted under <u>color of law, in bad faith,</u> and <u>with deliberate indifference</u> to the requirements of law, regulations, and rules, and have therefore forfeited any claim to absolute or qualified immunity.

15

44. The Supreme Court in <u>Berkovitz v United States</u>, (1988) 486 U.S. 531, 100 L.Ed.2d 539, 108 S.Ct. 1945 stated that"

> "The court stated that "the discretionary function exception is inapplicable to non-discretionary regulatory actions," <u>id</u>, at 1328, and noted that employees of regulatory agencies have no discrection to violate the command of federal statutes or regulations" quoting 822 F.2d 1322 (1987)."

45. The judges in this instant matter failed in their "non-discretionary" functions to insure the requirements of Title 40, § 255, and Title 18, §§§§ 2, 3, 5, 7, 3182, and 3193, Title 5, 3372 or 3374, and Rules of the court were met.

46. The prosecuting attorneys had the same "non-discretionary" requirement as the judges.

47. The other Federal employees involved also had the same "non-discretionary" requirements as the prosecutors and judges.

47. Title 28 U.S.C., § 2680(a) reads:

> "(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not discretion involved be abused."

48. The Court in <u>Jerome Stevens Pharmacy v Food & Drug Admin.</u>, 319 FS2d 45, 50 (D.D.C. 2004) held that:

> "<u>Id</u>. Second, the court must evaluate whether the challenged action "is of the kind that the discretionary function exception was designed to shield" from judicial second-guessing; namely, governmental actions and decisions based on public-policy considerations. Id. If the action is not grounded in public-policy concerns, it is not immunized by the discretionary-function exception. <u>Appleton v United States</u>, 69 FS2d 83, 92 (D.D.C. 1999)."

49. Title 28 U.S.C., § 2680(h) in part:

> "That, with regard to acts omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of

16

process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

50. 1AMJUR2d, § 21 states:

"But judicial officers may be held liable for abuse of process where the officer is wholly without jurisdiction and committs the abuse while acting under the pretense of his or her official capacity." Osbekoff v Mallory, (Iowa) 188 NW2d 294, 64 ALR3d."

## CONCLUSION

51. The intentional and colorable acts of the Federal employees were not grounded in the Congressional policy of the regulatory regime, therefore absolute or qualified immunity cannot apply.

52. As a result of the intentional non-discretionary acts of the Federal employees, Appellant has suffered assault, battery, false imprisonment, false arrest, and abuse of process which are crimes, because if a private person were to commit such atrocities, he/she would certainly be charged with crimes. See Appley Bros. v United States, 924 FS 944 (D.S.D 1996) aff'd 164 F3d 1164 (8th Cir. 1999); Huffman v United States, 82 F3d 703 (6th Cir. 1996); Irving v United States, 942 FS 1483 (D.N.H. 1996).

53. Furthermore, the acts were done in bad faith and with deliberate indifference to the requirements of law, regulations and rules of court and to the statutory rights of Appellant, and therefore have forfeited any claim to absolute or qualified immunity.

## Relief Requested

Wherefore, Appellant requests a sum set certain for the claim dated March 30, 2005, (amended) regarding the Court of Judge Faber, in the amount of $4,000,000,000.00 U.S. dollars; a sum set certain for the amended claim dated January 7, 2005, regarding the Court of Magistrate Taylor in the amount of

17

$1,500,000,000.00 U.S. dollars; a sum set certain for the amended complaint dated March 30, 2005, regarding Magistrate Feinberg in the amount of $1,500,000,000.00; a sum set certain for the amended complaint dated January 11, 2005 regarding U.S. Attorney Bleattler, now George, in the amount of $2,000,000,000.00; and a sum set certain for the amended complaint dated January 4, 2005, regarding IRS agent Klepadlo and partner in the amount of $1,000,000,000.00. Please notice that all the amended complaints were actually amended on June 23, 2005 and were sent to Kimberly P. Smith, Tort Branch, DOJ, Washington, D.C.

In the alternative, if the Court believes Appellant is asking to much in the sums set certain after Appellant has been falsely imprisoned for some five years, suffered assault, battery, false arrest, and abuse of process, then suggest the Government make me a reasonable offer of settlement.

A true, correct, and complete copy of the foregoing was sent 1st class US mail, postpaid to the United States Attorney, Judiciary Center, 555 4th St. N.W., Washington, D.C., 20530. Appellant requests that if this was mailed to the wrong Attorney, that it be mailed to the correct Attorney and notify me of the mailing.

The above information is true and correct based on the research by Appellant and is made pursuant to Title 28 U.S.C., § 1746(1).

*Rodney Eugene Smith*
Rodney Eugene Smith
FCC, Low, Unit C-3
P.O. Box 1031
Coleman, FL, 33521-1031

The foregoing was sworn and subscribed before me this _____ day of January 2006.

FCC Coleman, Florida Sumter County
Subscribed and sworn before me this
5th day of January, 2006.
_____
Case Manager

18   Authorized by the Act of July 7, 1955, as amended, to administer oaths (18 USC§4004.)